**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RODNEY MURO and PANFILO M. ZAMORA,** | **1:03-CV-6619 OWW SMS** |
| **Plaintiffs,** | ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION OF CITY OF FRESNO, RODNEY CANCIO, AND RAY VILLALVAZO FOR SUMMARY JUDGMENT (Fed.R.Civ.P. 56) |
| **v.** | |
| **FRESNO COUNTY SHERIFF DEPUTY JEFFREY SIMPSON; FRESNO POLICE OFFICER R. CANCIO; FRESNO POLICE OFFICER R. VILLALVAZO; CALIFORNIA HIGHWAY PATROL OFFICER T. GATES; CALIFORNIA HIGHWAY PATROL OFFICER J. WATSON; CITY OF FRESNO; COUNTY OF FRESNO; CALIFORNIA; and UNKNOWN LAW ENFORCEMENT OFFICERS,** | |
| **Defendants.** | |

## 1.  INTRODUCTION

Defendants the City of Fresno ("City"), Fresno Police Officer Rodney Cancio ("Cancio"), and Fresno Police Officer Ray Villalvazo ("Villalvazo") (collectively, "Defendants") move for summary judgment.  Plaintiffs Rodney Muro ("Muro") and Panfilo M. Zamora ("Zamora") (collectively, "Plaintiffs") oppose the motion.

1

**II.   PROCEDURAL HISTORY**

The complaint was filed on November 18, 2003.  Doc. 1, Compl.  The Defendants' answer was filed on May 3, 2004.  Doc. 8, Answer.  Defendants moved for summary judgment on April 28, 2006.  Doc. 68, Mot. for Summ. J.  Plaintiffs filed opposition on June 20, 2006.  Doc. 77, Mem. in Opp.  Defendants replied on June 29, 2006.  Doc. 80, Reply.  At the court's invitation, Defendants offered further briefing regarding qualified immunity, malicious prosecution, and municipal liability issues raised in the August 7, 2006, oral argument.  Doc. 87, Brief.  Plaintiffs replied on August 10, 2006.  Doc. 89, Reply to Brief.

**III.   BACKGROUND**

**A.   Undisputed Facts**

1. On November 20, 2002, Deputy Jeffrey Simpson ("Simpson") of the Fresno County Sheriff's Department received information that a day or two before, Sergeant Hansen from the Sheriff's Department had been to 4633 East Michigan Street ("the residence") in Fresno, to investigate charges against Javier Ortega of receiving stolen property, resisting arrest, and obstructing a peace officer.  Doc. 78, Pls.' Resp. to Statement of Undisputed Facts [hereinafter, "RSUF"] #1 (*see* Dep. of Jeffrey Simpson [hereinafter, "Simpson Dep."], 9:2-12, 11:14-18).

2. Simpson believed that when Sergeant Hansen was there, he was harassed by aggressive gang members from the residence and neighboring houses.  *Id.*, RSUF #2 (*see* Simpson Dep., 9:15-22, 20:24-21:8.

3. Based on this information, Simpson conducted a premises

**2**

1   history to determine if any gang members were associated with the
2   residence and if there were any outstanding warrants for its
3   residents.  *Id.*, RSUF #3 (*see* Simpson Dep., 12:2-13).

4        4. The premises history showed Javier Ortega ("Ortega") and
5   Plaintiff Muro were associated with the residence.  *Id.*, RSUF #4
6   (*see* Simpson Dep., 12:19-20 and 17:1-7).

7        5. Simpson's subsequent search of the Records Management
8   System ("RMS") database showed an outstanding warrant for
9   Ortega's arrest.  *Id.*, RSUF #5 (*see* Simpson Dep., 17:8-22).

10       6. The RMS listed several entries for Ortega, each listing
11  the East Michigan residence as his home address.  *Id.*, RSUF #6
12  (*see* Simpson Dep., 17:13-22).

13       7. Simpson called his Department's records unit and
14  confirmed that the Ortega arrest warrant was still active.  *Id.*,
15  RSUF #7 (*see* Simpson Dep., 20:14-23).

16       8. Simpson also ran Ortega's driver's license through his
17  Department's computer automated dispatch, which showed Ortega's
18  address was 4633 East Michigan.  *Id.*, RSUF #8 (*see* Simpson Dep.,
19  17:19-18:18).

20       9. Simpson then informed his superior in the Multi-Agency
21  Gang Enforcement Consortium ("MAGEC") task force, Sergeant John
22  Jensen of the Fresno Police Department ("FPD"), that Simpson had
23  located a person with a $150,000 arrest warrant for possession of
24  stolen property and that Simpson wanted to serve the warrant.
25  *Id.*, RSUF #9 (*see* Simpson Dep., 20:24-21:12).

26       10. Sergeant Jensen authorized Simpson to prepare a warrant
27  package and arrange a briefing with other members of the MAGEC
28  team in preparation for serving the warrant.  *Id.*, RSUF #10 (*see*

**3**

1   Decl. of John Jensen [hereinafter, "Jensen Decl."], ¶ 7).

2       11. Deputy Simpson held a briefing in the MAGEC office with

3   all members of the Metro MAGEC Tac Team who were going to serve

4   the arrest warrant.  They included Sergeant Jensen, Defendant

5   Villalvazo of the FPD, Defendant Cancio, also of the FPD, Officer

6   James Watson ("Watson") of the California Highway Patrol ("CHP"),

7   and Officer Tony Gates ("Gates"), also of the CHP.  *Id.*, RSUF #11

8   (*see* Simpson Dep., 30:5-7, 31:25-32:4).

9       12. During this briefing, Simpson informed the MAGEC team

10  officers regarding the 4633 East Michigan Street residents'

11  harassment of Sergeant Hansen two days before and the active

12  warrant for Ortega.  *Id.*, RSUF #12 (*see* Simpson Dep., 31:4-13).

13      13. Deputy Simpson gave each officer a package that included

14  a copy of Ortega's felony arrest warrant and photograph.  *Id.*,

15  RSUF #13 (*see* Simpson Dep., 37:17-21).

16      14. Around 6:10 p.m. on November 20, 2002, the MAGEC team

17  went to the East Michigan Street residence to arrest Ortega, a

18  possible Fresno Bulldog gang member.  *Id.*, RSUF #14 (*see* Simpson

19  Dep., 21:8-11).

20      15. Upon arrival, Villalvazo and Gates covered the rear of

21  the residence.  *Id.*, RSUF #15.

22      16. Defendant Cancio covered the southwest front window.

23  *Id.*, RSUF #16.

24      17. Simpson, Watson, and Jensen made contact at the front

25  door. *Id.*, RSUF #17.

26      18. The front door of the residence had a main interior door

27  and a plexiglass security door.  *Id.*, RSUF #18.

28      19. It was dark outside and the porch light was off.  *Id.*,

**4**

RSUF #19.

20. Deputy Simpson rang the door bell and a Hispanic female who appeared to be in her thirties, opened the interior door but not the security door. *Id.*, RSUF #20.

21. A male, later identified as Plaintiff Muro, came to the front door wearing a white Fresno State Bulldog jersey with red lettering and jeans. *Id.*, RSUF #21.

22. Meanwhile, Gates and Villalvazo were in the backyard when they looked through a window and saw an individual inside the residence sitting on the couch whom they misidentified as Ortega. *See id.*, RSUF #22.

23. The subject, later identified as Plaintiff Zamora, was wearing a red, long-sleeved, Fresno State Bulldog sweater and blue jeans. *Id.*, RSUF #23.

24. Based on what Gates and Villalvazo observed, they believed Plaintiff Zamora's physical characteristics were consistent with Ortega's description. *Id.*, RSUF #24 (*see* Gates Dep., 8:21-9:9).

25. Gates and Villalvazo then announced over the radio that Ortega was inside the residence towards the back part of the house in a red sweatshirt. *Id.*, RSUF #25 (*see* Gates Dep., 27:3-20).

26. When Simpson saw Plaintiff Zamora, Simpson believed Plaintiff Zamora looked like Ortega. *Id.*, RSUF #27 (*see* Simpson Dep., 53:3-54:2).

27. Plaintiff Muro understood Simpson thought Plaintiff Zamora was Ortega. *Id.*, RSUF #28 (*see* Muro Dep., 55:21-56:9).

28. At or about the same time that Simpson saw Plaintiff

**5**

Zamora, Gates communicated via radio to the other officers on the scene Gates' belief that Plaintiff Zamora was Ortega, was in the back room, and was moving towards the front of the residence. *Id.*, RSUF #29 (*see* Simpson Dep., 54:3-11).

29. Simpson believed Gates was referring to Ortega. *Id.*, RSUF #30.

30. Once at the front of the house, Plaintiff Zamora was shutting the door when he heard one of the officers identify him as Ortega. *Id.*, RSUF ##31-33 (*see* Zamora Dep., 54:16-25, 56:23-57:5).

31. Plaintiff Muro also heard another officer behind Simpson say the officer thought Plaintiff Zamora was Ortega. *Id.*, RSUF #34 (*see* Muro Dep., 56:17-21, 57:23-58:10).

32. Given Plaintiff Zamora's actions at this point, Simpson still suspected that he was Ortega. *Id.*, RSUF #35 ("disputed as irrelevant").

33. Plaintiff Zamora then re-opened the interior front door. *Id.*, RSUF #36 ("disputed as irrelevant").

34. Plaintiff Zamora made no effort to communicate with the officers through the screen door and did not tell the officers that he was *not* Ortega or show them his ID at this time.  Id., RSUF #37 ("[r]esponse: This asserted fact is disputed as inaccurate.  *After being handcuffed*, Zamora told the officers that he was not Ortega.") (emphasis added).

35. Defendant Cancio did not see the initial interaction at the front door.  As this interaction was happening at the front door between Simpson and the occupants of the home, Defendant Cancio, who was positioned on the west side of the house near a

**6**

1  window heard the commotion at the front door and heard Simpson

2  telling someone at the front door to move out of the way

3  otherwise he would have to arrest him.  *Id.*, RSUF #38 [JUDGE:

4  Plaintiffs "dispute this fact as inaccurate," but their

5  explanation of why they dispute it doesn't really contradict it.]

6      36.  Defendant Cancio then moved closer to the front door,

7  where he saw Simpson standing approximately four feet from

8  Plaintiff Muro, whose back was towards the front door.  Simpson

9  continued to tell Mr. Muro to move.  *Id.*, RSUF #39.

10      37.  Plaintiffs Muro and Zamora were charged with violation

11  of California Penal Code Sections 69, (resisting an executive

12  officer by threats or violence), 148(a) (obstructing or resisting

13  a peace officer), and 243(b) (battery on a peace officer).

14      38.  Both Plaintiff Muro and Plaintiff Zamora pled *nolo*

15  *contendere* to a violation of California Penal Code Section

16  148(a), a misdemeanor.  *Id.*, RSUF #68.

17      39.  Plaintiff Muro waived his constitutional rights by

18  writing his initials in several places on the Misdemeanor

19  Advisement, Waiver of Rights, and Plea Form.  *Id.*, RSUF #69.  As

20  part of his plea bargain, Plaintiff Muro was given probation for

21  six months, after which the charges were dismissed.  *Id.*, RSUF

22  #70.

23      40.  Plaintiff Zamora also pled *nolo contendere* to a

24  violation of Section 148(a)(1).  *Id.*, RSUF #71.

25      41.  Plaintiff Zamora signed the waiver of constitutional

26  rights form acknowledging his plea had the same force and effect

27  as a guilty plea.  *Id.*, RSUF #72.

28      42.  If Plaintiffs had been arrested and/or convicted at any

**7**

time during their probation period, the charges would not be
dismissed and the convictions would stand. *Id.*, RSUF #73.

43.   Mr. Muro and Mr. Zamora freely and voluntarily waived
their Constitutional rights in exchange for probation of six
months at the end of which, the charges against then were
dismissed. *Id.*, RSUF #74.

**B.   Disputed Facts**

1.   Defendant Cancio testified in deposition that Plaintiff
Muro was standing with his arms by his sides in a non-threatening
way when Defendant Cancio came to the front of the house. *Id.*,
RSUF #39 (reply).

2.   According to Cancio, Plaintiff Muro did not appear to
be preventing Simpson from entering the residence, that Simpson
could have walked past Plaintiff Muro into the residence, and
that although Simpson was ordering Plaintiff Muro to "move or I'm
going to arrest you," Simpson did not tell Plaintiff where to
move on the narrow porch. *Id.*

3.   Plaintiffs deny Plaintiff Muro intentionally blocked
the doorway or obstructed the officers in any way. *Id.*, RSUF #40
(reply).

4.   Defendants allege Simpson then tried to arrest
Plaintiff Muro by grasping Plaintiff Muro's wrist to handcuff
him, but Plaintiff Muro violently resisted Simpson, slamming
Simpson several times against an exterior wall of the residence.
*Id.*, RSUF ##41-43.

5.   Plaintiffs deny Simpson ever attempted to arrest
Plaintiff Muro in this way:

**8**

1    6.   To the contrary, [Plaintiff] Muro testified [] Simpson

2  pushed him towards the house's entry door.  Simpson tried to

3  punch [Plaintiff] Muro, but [Plaintiff] Muro moved his head.

4  After [Defendant Cancio] . . . tasered [Plaintiff Muro], Simpson

5  dragged [Plaintiff] Muro off of the porch by his leg.  Simpson

6  then turned [Plaintiff] Muro over and struck him on his back and

7  legs with a baton multiple times.

8    7.   At some point during the latter part of the incident,

9  [Plaintiff] Muro was also maced by an officer. [Plaintiff] Muro

10  was then handcuffed and taken to a patrol car.  At no point

11  during this incident did [Plaintiff] Muro resist or attack

12  Simpson or another officer.

13  *Id.*, RSUF #42 (reply).

14    8.   Defendant Cancio noticed Plaintiff Zamora was wearing a

15  red Fresno State Bulldogs sweatshirt.  *Id.*, RSUF #47.

16    9.   Defendants allege Defendant Cancio warned Plaintiff

17  Muro to quit resisting or Defendant Cancio would taser Plaintiff

18  Muro.  *Id.*, RSUF #48.

19    10.   Plaintiffs deny Plaintiff Muro was resisting.  *Id.*,

20  RSUF #48 (reply).  Plaintiffs also allege the only warning

21  Defendant Cancio gave Plaintiff Muro that Defendant Cancio was

22  about to taser Plaintiff Muro was shouting the word "taser."  *Id.*

23    11.   Defendant Cancio conceded in deposition testimony that,

24  while this was enough to put a fellow officer on notice that a

25  taser was about to be deployed, a citizen might not understand

26  the significance of this shorthand pronouncement.  *Id.*, RSUF #50

27  (reply).

28    12.   Defendants allege "[Defendant] Cancio's laser sight was

**9**

1  directly pointed at [Plaintiff] Muro as he stood [] in a
2  fighting, bladed, and aggressive stance." *Id.*, RSUF #51.

3      13.   Plaintiffs deny Plaintiff Muro ever assumed such a
4  stance at any point. *Id.*, RSUF #52.

5      14.   Defendants allege it was only after Plaintiff Muro
6  disobeyed Defendant Cancio's orders to get down that Defendant
7  Cancio tasered Plaintiff Muro. *Id.*, RSUF ##53-54.

8      15.   Plaintiffs deny Plaintiff Muro ever resisted the
9  officers. *Id.*, RSUF #53.

10     16.   Defendants allege Plaintiff Muro did not fall to the
11 ground immediately after Defendant Cancio tasered Plaintiff Muro,
12 the usual reaction to being struck by taser darts and
13 electrocuted, but stood motionless and balled up his fists. *Id.*,
14 RSUF ##55, 57.

15     17.   This led Defendant Cancio to believe Plaintiff Muro was
16 preparing to start resisting again. *Id.*, RSUF ##57, 59.

17     18.   Defendant Cancio warned Plaintiff Muro several more
18 times to get down, but Plaintiff Muro ignored his warnings, so
19 Defendant Cancio caused a second charge of electricity to be
20 applied to Plaintiff Muro. *Id.*, RSUF ##58, 59.

21     19.   Plaintiffs deny Plaintiff Muro ever resisted any
22 officer during the incident. *Id.*, RSUF #55 (reply).

23     20.   Plaintiffs allege Plaintiff Muro immediately fell to
24 his backside on the porch after being tasered, and Simpson
25 dragged him off the porch by his leg. *Id.*, RSUF ##57, 58
26 (reply).

27     21.   Defendants allege Plaintiff Muro continued to disobey
28 Defendant Cancio's orders to lie down, leading Defendant Cancio

**10**

1   to conclude the second charge was ineffective.  *Id.*, RSUF #61.

2        22.  Plaintiff Muro dropped to one knee after the second

3   charge, but tried to stand and balled his fists again.  *Id.*, RSUF

4   #60.

5        23.  Fearing Plaintiff Muro was going to attack him,

6   Defendant Cancio backed away and re-loaded his taser.  *Id.*, RSUF

7   #62.

8        24.  Plaintiffs deny each of these allegations.  *Id.*, RSUF

9   ##60-62 (replies).

10       25.  Meanwhile, Jensen and Watson brought Plaintiff Zamora

11  out of the residence.  *Id.*, RSUF #63.

12       26.  Defendants allege Defendant Villalvazo, having come

13  around to the front of the house from the back, saw and heard

14  Simpson tell Plaintiff Muro to lie down on his stomach, but

15  Plaintiff Muro kicked his leg out towards Simpson and tried to

16  rise to his feet.  *Id.*, RSUF #65.

17       27.  Plaintiffs deny Plaintiff Muro ever resisted the

18  officers.  Id., RSUF #65 (reply).

19       28.  With his baton, Simpson struck Plaintiff Muro on the

20  leg.  *Id.*, RSUF #66 ("[r]esponse: This fact is disputed only as

21  incomplete, since [Plaintiff] Muro was hit not only on the leg

22  but [on] his back as well").

23       29.  Defendants allege: "[a]t that point, [Plaintiff] Muro

24  complied and la[y] down on his stomach and [Defendant] Villalvazo

25  placed handcuffs on him."  *Id.*, RSUF #67.

26       30.  Plaintiffs deny Plaintiff Muro ever resisted the

27  officers.  *Id.*, RSUF #67 (reply).

28       31.  Plaintiffs respond to each of RSUF ##68-74 as follows:

**11**

1
2
3
4
5
6
7
8
9

>The primary factual flaw in the moving [D]efendants' argument is that [Plaintiffs] Muro and Zamora were never convicted of the Penal Code § 148(a)(1) charges to which they pled no contest on February 19, 2004.  Instead, as part of a conditional plea, which did not include any fine, liberty restriction, or any other obligation, Muro and Zamora were entitled to have their charges dismissed after 6 months if they either were not arrested or convicted of another charge in the intervening time.  In accordance with the conditional plea, on August 20, 2004, Muro's and Zamora's 148(a)(1) charges were dismissed.  Thus, Muro and Zamora were never convicted of any criminal charge; no judgment of conviction was ever issued in either of their cases. [citations]

10  *Id.*, RSUF ##68-74 (replies).

11       32.  The arrest warrant was valid and the officers had the

12  legal authority to serve the warrant at the residence.  *Id.*, RSUF

13  #75 (reply: "denied as inaccurate. . . the officers only had the

14  right to serve the warrant if they had reliable information that

15  the subject actually lived there.  Moreover, due to the Fresno

16  Police Department's regrettable policies regarding validating

17  warrants and keeping more expansive records, repeated service

18  attempts are made to the same incorrect address.")

19       33.  Ortega's wanted persons photograph attached to the

20  Warrant Abstract and the post-incident photographs of Mr. Zamora

21  depict remarkable similarities between the two in terms of their

22  physical appearance.  *Id.*, RSUF #77 (reply: "disputed as

23  inaccurate").

24       34.  A color representative of the Bulldog gang is red.

25  *Id.*, RSUF #78.

26       35.  Plaintiff Muro acknowledged the Fresno State Bulldog

27  jersey he was wearing is also worn by members of the Bulldog

28  gang.  *Id.*, RSUF #79.

**12**

1    36.   Defendants allege when Defendant Villalvazo approached

2  the front of the house, he observed a struggle between Simpson

3  and Plaintiff Muro; taser wires protruded from Plaintiff Muro.

4  *Id.*, RSUF #88.   This reasonably led Defendant Villalvazo to

5  believe the officers were attempting to place [Plaintiff] Muro

6  into custody because he was under arrest and was resisting. Id.,

7  RSUF #89.

8    37.   Plaintiffs reply to both RSUF ##88-89 as follows:

9          This asserted fact is irrelevant, and inaccurate,
            since neither [Plaintiff] Muro nor [Plaintiff]
10         Zamora resisted or [was] aggressive as to any
            officer during the incident.  Clearly, no force
11         can reasonably be used on such a person.

12  *Id.*, RSUF ##88, 89 (replies).

13    38.   After Plaintiff Muro was on his stomach, Defendant

14  Villalvazo placed handcuffs on him.  *Id.*, RSUF #90 ("[r]esponse:

15  This fact is disputed as incomplete, since [Defendant] Villalvazo

16  also used OC spray on Muro at some point during the incident.")

17

18                      **IV.   LEGAL STANDARD**

19    Summary judgment is warranted only "if the pleadings,

20  depositions, answers to interrogatories, and admissions on file,

21  together with the affidavits, if any, show that there is no

22  genuine issue as to any material fact."  Fed.R.Civ.P. 56(c); *Cal.*

23  *v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998).  Therefore, to

24  defeat a motion for summary judgment, the non-moving party must

25  show (1) that a genuine factual issue exists and (2) that this

26  factual issue is material.  *Id.*  A genuine issue of fact exists

27  when the non-moving party produces evidence on which a reasonable

28  trier of fact could find in its favor viewing the record as a

**13**

1  whole in light of the evidentiary burden the law places on that
2  party. *See Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216,
3  1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*,
4  477 U.S. 242, 252-56 (1986). Facts are "material" if they "might
5  affect the outcome of the suit under the governing law."
6  *Campbell,* 138 F.3d at 782 (*quoting Anderson,* 477 U.S. at 248).

7      The non-moving party cannot simply rest on its allegations
8  without any significant probative evidence tending to support the
9  complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th
10 Cir.2001). The plain language of Rule 56(c) mandates the entry
11 of summary judgment, after adequate time for discovery and upon
12 motion, against a party who fails to make a showing sufficient to
13 establish the existence of an element essential to the party's
14 case, and on which that party will bear the burden of proof at
15 trial. In such a situation, there can be "no genuine issue as to
16 any material fact," since a complete failure of proof concerning
17 an essential element of the non-moving party's case necessarily
18 renders all other facts immaterial. *Celotex Corp. v. Catrell,*
19 477 U.S. 317, 322-23 (1986).

20     The more implausible the claim or defense asserted by the
21 non-moving party, the more persuasive its evidence must be to
22 avoid summary judgment. *See United States ex rel. Anderson v. N.*
23 *Telecom, Inc.,* 52 F.3d 810, 815 (9th Cir. 1996). Nevertheless,
24 the evidence must be viewed in a light most favorable to the non-
25 moving party. *Anderson,* 477 U.S. at 255. A court's role on
26 summary judgment is not to weigh evidence or resolve issues;
27 rather, it is to determine whether there is a genuine issue for
28 trial. *See Abdul-Jabbar v. G.M. Corp.,* 85 F.3d 407, 410 (9th

**14**

1    Cir. 1996).

2

3                            **V.   ANALYSIS**

4         Title 42, Section 1983, of the United States Code creates a

5    cause of action against a person who, acting under color of state

6    law, deprives another of rights guaranteed under the

7    Constitution.  Section 1983 does not create any substantive

8    rights; rather it is the vehicle whereby plaintiffs can challenge

9    actions by governmental officials.  To prove a case under section

10   1983, Plaintiffs must demonstrate that (1) the action occurred

11   "under color of state law" and (2) the action resulted in the

12   deprivation of a constitutional right or federal statutory right.

13   *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

14

15   **A.   First Amendment Claims**

16        At oral argument, Plaintiffs conceded that they have no

17   compensable First amendment civil rights claim.  The motion for

18   summary judgment is GRANTED as to Plaintiffs' First Amendment

19   claim.

20

21   **B.   Malicious Prosecution**

22        Plaintiffs allege under Title 42, Section 1983, of the

23   United States Code, that Defendants Cancio and Villalvazo falsely

24   reported Plaintiffs "resisted and attacked the officers" during

25   the November 20, 2002, incident.  Doc. 77-1, Mem. in Opp., 15;

26   id., 2 ("[Plaintiffs] Muro and Zamora allege claims under

27   [Section] 1983 for . . . malicious prosecution based on the

28   Fourth Amendment"); *see also id.*, 24 ("both [Defendants] Cancio

                                **15**

1  and Villalvazo wrote reports that, under [Plaintiffs'] versions
2  of events, are false but yet were submitted as documentation of
3  the existence of probable cause").   Plaintiffs allege Defendants
4  submitted these reports to the Fresno County District Attorney
5  intending they be used to support criminal charges against
6  Plaintiffs, and they were in fact so used.   Doc. 78, RSUF, 56.

7       At oral argument conducted August 7, 2006, Plaintiffs
8  conceded neither Defendant Cancio nor Defendant Villalvazo wrote
9  reports of the incident which indicated Plaintiff Zamora resisted
10  the officers, and summary judgment was GRANTED in favor of
11  Defendants regarding Plaintiff Zamora's malicious prosecution
12  claim.   Plaintiff Muro's Section 1983 malicious prosecution claim
13  against Defendants Cancio and Villalvazo is still before the
14  court.

15       In a criminal context, the tort of malicious prosecution
16  consists of initiating or procuring the arrest and prosecution of
17  another under lawful process, but from malicious motives and
18  without probable cause, where the prosecution is terminated in
19  favor of the accused.   5 Witkin, Summ. of Cal. Law, *Torts* § 475.
20  Under California law, the elements of a malicious prosecution
21  claim are: the underlying prosecution, (1) was commenced by or at
22  the direction of the Defendants and was pursued to a legal
23  termination in Plaintiff's favor; (2) was brought without
24  probable cause; and (3) was initiated with malice.   *Conrad v.*
25  *United States*, 447 F.3d 760, 767 (9th Cir. 2006) (citations and
26  internal quotation marks omitted).

27       **1.    Whether Plaintiff Muro's Malicious Prosecution Claim is**
28          **Cognizable under Section 1983**

**16**

1    A Section 1983 malicious prosecution plaintiff must prove

2 that defendants acted for the purpose of depriving him of a

3 specific constitutional right.  *Awabdy v. City of Adelanto*, 368

4 F.3d 1062, 1069 (9th Cir. 2004).

5    Plaintiff Muro alleges "malicious prosecution *based on the*

6 *Fourth Amendment*."  Doc. 77-1, Mem. in Opp., 2.  Plaintiff Muro's

7 malicious prosecution claim invokes the Fourth Amendment right

8 not to be arrested without probable cause and thereafter

9 wrongfully prosecuted.  Because Plaintiff Muro was arrested

10 pursuant to the charges for which, he claims, he was later

11 maliciously prosecuted and required to hire a lawyer and go to

12 court to defend those charges.  Plaintiff Muro was also required

13 to appear before the court to face the charges, and his failure

14 to do so would have resulted in his arrest.  Both of these facts

15 implicate the Fourth Amendment sufficiently to render Plaintiff

16 Muro's malicious prosecution claim cognizable under Section 1983.

17

18        **2.   Plaintiff Muro's *Nolo Contendere* Plea**

19    Plaintiffs were charged with one violation each of

20 California Penal Code Section 69 (obstructing or resisting

21 executive officers in performance of their duties by threats or

22 violence) (felony); 148(a) (resisting, delaying, or obstructing

23 an officer) (misdemeanor); and 243(b) (battery on a peace

24 officer) (felony).  Doc. 78, RSUF #68.  Plaintiffs pled *nolo*

25 *contendere* to the Section 148(a) misdemeanor charges, *id.*, and

26 the Section 69 and 243(b) felony charges were dismissed, Doc. 77,

27 Mem. in Opp., Ex. 3, p. 6.  Because Plaintiffs were not arrested

28 or convicted for any charges in the following six months, they

**17**

1   were then allowed to withdraw their *nolo contendere* plea to the

2   Section 148(a) charges, which were dismissed.  *Id.*; Doc. 78, RSUF

3   #68 (reply).

4        To be considered "favorable" for purposes of a malicious

5   prosecution claim, a termination in the underlying action must

6   reflect the merits of the action and plaintiff's innocence of the

7   misconduct alleged in the lawsuit.  The key is whether the

8   termination reflects on the underlying defendant's innocence.  If

9   the resolution of the underlying litigation leaves *some doubt* as

10  to the defendant's innocence or liability, it is not a favorable

11  termination, and bars that party from bringing a malicious

12  prosecution action against the underlying plaintiff.  Favorable

13  termination is an essential element of the tort of malicious

14  prosecution, and it is strictly enforced.  *StaffPro, Inc. v.*

15  *Elite Show Services, Inc.*, 136 Cal.App.4th 1392, 1399-1400

16  (Cal.App. 4 Dist.,2006) (emphasis added) (citations and internal

17  quotation marks omitted).  *See also Awabdy v. City of Adelanto*,

18  368 F.3d 1062, 1068 (9th Cir. 2004) ("[a]n individual seeking to

19  bring a malicious prosecution claim must generally establish that

20  the prior proceedings terminated in such a manner as to indicate

21  his innocence").

22

23                **a.   The Section 69 and Section 243(b) Charges**

24       Under California law, the favorable termination which is

25  essential to plaintiff in a malicious prosecution action cannot

26  be based on the dismissal of the criminal charges remaining after

27  the defendant in a criminal proceeding has entered a plea of *nolo*

28  *contendere* to one or more of the charges in the accusatory

**18**

1   pleading pursuant to a plea bargain.  *Cote v. Henderson*, 218
2   Cal.App.3d 796, 804 (Cal.App. 2 Dist.,1990).  Here, the
3   California Penal Code Section 69 and Section 243(b) charges
4   against Plaintiffs were dismissed outright based on the
5   Plaintiffs' pleas of *nolo contendere*.  The dismissals of these
6   charges arguably satisfy the favorable-termination element of
7   Plaintiff Muro's malicious prosecution action.  However, the
8   dismissals were part of a package deal as to all three charges.

9

10          **b.   The Section 148(a) Charges**

11       Under California law, a plea of *nolo contendere* is
12   considered the same as a plea of guilty.  Upon a plea of *nolo*
13   *contendere*, the court shall find defendant guilty, and its legal
14   effect is the same as a plea of guilty for all purposes.  It
15   negates the element of a favorable termination, which is a
16   prerequisite to stating a cause of action for malicious
17   prosecution.  *Cote*, 218 Cal.App.3d at 803 (Cal.App. 2 Dist.,1990)
18   (*citing* Cal. Pen. Code § 1016(3)); *see also* 5 Witkin, Summ. of
19   Cal. Law, *Torts* § 478 (10th ed. 2005).  Here, Plaintiff Muro's
20   conditional *nolo contendere* plea is not inconsistent with his
21   guilt, and is not a favorable-termination.  *See Awabdy*, 368 F.3d
22   at 1068.

23       Plaintiffs argue:

24           because the record shows [] [Plaintiffs] were not
             convicted, did not admit facts harmful to their
25           civil rights claims, and, at least arguably,
             achieved a favorable termination to their criminal
26           cases, their . . . malicious prosecution cases
             should proceed to trial.
27
28   Doc. 89, Pls.' Further Briefing, 4-5.  This is not accurate.

**19**

1    A *nolo contendere* plea is equivalent to a guilty plea for

2  all purposes under California law.  Cal. Pen. Code § 1016(3).  A

3  guilty plea admits every element of the charged offense.  *People*

4  *v. Watts*, 131 Cal.App.4th 589, 594-95 (Cal.App.5 Dist. 2005).

5  Here, the plea forms show that each Defendant admitted facts in

6  the police report under *People v. West* to provide a factual basis

7  for their nolo pleas.  For six months Plaintiffs stood convicted

8  of Pen. C. § 148(a).  This is not a favorable termination.

9  Plaintiffs could have negotiated to let the charges continue

10 against them for six months, whereafter the charges could have

11 been dismissed, but did not.  Instead they admitted the truth of

12 the 148(a) charge.  Plaintiff Muro cannot maintain a malicious

13 prosecution claim.

14

15         **c.   Section 1192.5**

16    Plaintiffs argue their *nolo contendere* pleas were withdrawn,

17 and California Penal Code Section 1192.5 bars introduction of

18 their pleas as evidence.  Doc. 92, Withdrawal of Stipulation, 1-

19 2.

20    The relevant portion of Section 1192.5 reads:

21         If the plea is withdrawn or deemed withdrawn, it
           may not be received in evidence in any criminal,
22         civil, or special action or proceeding of any
           nature, including proceedings before agencies,
23         commissions, boards, and tribunals.

24 Cal. Pen. Code § 1192.5.

25    Plaintiffs were allowed to withdraw their pleas only after

26 satisfying the conditions of obeying the law for six months.

27 Even if Muro was under a pre-existing duty to obey the law, he

28 accepted criminal responsibility for six months subject to a

**20**

1  condition of good behavior, during which period he stood

2  convicted of Pen. C. § 148(a).  This is not an unconditionally

3  favorable termination, totally consistent with innocence.

4

5           **3.    Presumption of Prosecutorial Independence**

6       Even assuming, *arguendo*, Plaintiff Muro can assert a

7  malicious prosecution claim against Cancio and Villalvazo, he

8  still must overcome the presumption of prosecutorial

9  independence.  The filing of a criminal complaint immunizes

10 investigating officers from damages suffered thereafter because

11 it is presumed the prosecutor who filed the complaint exercised

12 independent judgment in determining probable cause for an

13 accused's arrest existed at that time.  *Newman v. County of*

14 *Orange*, — F.3d —, 2006 WL 2241584, ------- (9th Cir. 2006)

15 (*citing Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)).  If

16 charges are filed, *Smiddy* protects the officers unless evidence

17 shows that officers interfered with the prosecutor's judgment in

18 some way, by omitting relevant information, by including false

19 information, or by pressuring the prosecutor to file charges.  A

20 suspect's account of an incident, by itself, is unlikely to

21 influence a prosecutor's decision, and thus it cannot, by itself,

22 serve as evidence that officers interfered with the prosecutor's

23 decision.  *Newman*, — F.3d —, 2006 WL 2241584, -------:

24          We are hard-pressed to conceive of a malicious
            prosecution case in which the plaintiff's version
25          of events would not conflict with the arresting
            officer's account.  In virtually every case, then,
26          the presumption would be rebutted, and it would
            never limit the liability of the officer, contrary
27          to its stated purpose.

28 *Newman*, — F.3d —, 2006 WL 2241584, -------.

                              **21**

1    Plaintiffs argue *Hartman v. Moore*, 126 S.Ct. 1695 (2006),

2  relieved Plaintiffs of the burden to produce evidence other than

3  their own account of events to avoid summary judgment.  Doc. 89,

4  Pls.' Further Briefing, 5.  Plaintiffs misread *Hartman*.  *Hartman*

5  only holds that absence of probable cause is an element of a

6  *Bivens* retaliatory prosecution claim that must be pleaded and

7  proved.  *Hartman*, 126 S.Ct. at 1707 (a plaintiff . . . must show

8  that the nonprosecuting official acted in retaliation, and must

9  also show that he induced the prosecutor to bring charges that

10 would not have been initiated without his urging).  *Hartman* did

11 not change the elements of malicious prosecution under California

12 law.  This helps to explain why *Newman* "fail[ed] to even cite"

13 *Hartman*.  Doc. 89, Pls.' Further Briefing, 5.

14     Plaintiffs argue:

15          Even if . . . *Newman* is construed to require a
            plaintiff to present more than his own
16          contradictory testimony to overcome the
            presumption of prosecutorial independence, the
17          record before the [c]ourt contains substantial
            evidence in this regard.

18

19 *Id.*  Plaintiffs adduce "the testimony of Reyna Muro, their expert

20 witnesses, photographs of the incident scene indicating [] the

21 officers' varied account[s] are implausible, and . . . the

22 contradictory accounts of the [D]efendant officers themselves" as

23 additional corroborating evidence.  *Id.*, 5-6.

24

25          **a.   The Defendant Officers' Reports**

26     Plaintiffs allege Cancio and Villalvazo submitted false

27 reports of the incident to the prosecutor to influence the

28 prosecutor to file criminal charges against Plaintiff Muro.  Doc.

1   77-1, Mem. in Opp., 33.  Plaintiffs claim the false reports were

2   submitted to the prosecutor as part of the complaint filing

3   process.  Technically, Plaintiffs do not refer to specific

4   evidence that confirms the Defendant officers' reports were

5   relied on by the prosecutor who filed the complaints charging

6   Plaintiffs.

7

8                    **b.   The Defendant Officers' Depositions**

9        As evidence that Defendants Cancio and Villalvazo improperly

10  influenced the prosecutor to file criminal charges against

11  Plaintiffs, Plaintiffs adduce the deposition testimony of these

12  officers, which Plaintiffs allege "wildly diverg[es]," Doc. 78,

13  RSUF, 56, from their reports of the incident.  Doc. 89, Pls.'

14  Further Briefing, 6 ("the contradictory accounts of the

15  [D]efendant officers themselves, not only in their reports, but

16  in their depositions").

17       The depositions could not have influenced the prosecutor to

18  file criminal charges against Plaintiffs, because they were not

19  taken until after the criminal charges were dismissed.  They are

20  not by themselves evidence of improper influence by Cancio or

21  Villalvazo.  *Newman*, — F.3d —, 2006 WL 2241584, ------- (*citing*

22  *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986)).  If

23  Cancio's and Villalvazo's deposition accounts of the incident

24  differ from their reports, this could constitute evidence that

25  they did not accurately describe the incident in the reports.

26  *See, e.g.*, *Borunda v. Richmond*, 885 F.2d 1384, 1390 & n.6 (9th

27  Cir. 1988).  These contradictory facts are enough to raise

28  question whether the information the prosecutor received was

intentionally false, however, because the nolo pleas do not
unconditionally establish Muro's innocence, Defendant Officers
are entitled to summary judgment on the malicious prosecution
claim.

## C.   Excessive Force

The Fourth Amendment does not prohibit a police officer's
use of reasonable force during an arrest.   The first inquiry in
analyzing excessive force claims is whether the officers' actions
were objectively reasonable in light of the facts and
circumstances confronting them.   The facts underlying an
excessive force claim are considered from the perspective of a
reasonable officer on the scene, without regard to the arresting
officer's subjective motivation for using force.   Whether a
particular use of force was objectively reasonable depends on
several factors, including the severity of the crime that
prompted the use of force, the threat posed by a suspect to the
police or to others, and whether the suspect was resisting
arrest.   *Tatum v. City and County of San Francisco*, 441 F.3d
1090, 1095 (9th Cir. 2006).

### 1.   Defendant Cancio

#### a.   Actions taken toward Plaintiff Muro

It is undisputed that Defendant Cancio tasered Plaintiff
Muro, temporarily paralyzing him and causing him to fall to the
ground.   Doc. 78, RSUF ##48-54.

According to Defendants, Plaintiff Muro obstructed Defendant
Simpson's attempt to serve a lawful arrest warrant by blocking
the front doorway of the residence, preventing Defendant Simpson

**24**

1  from entering.  Doc. 68, Mot. for Summ. J., 4.  Plaintiff Muro

2  refused Defendant Simpson's request to allow Defendant Simpson

3  entry to the residence, and ignored Defendant Simpson's warning

4  that he would arrest Plaintiff Muro if Plaintiff Muro did not

5  comply.  *Id.*  Plaintiff Muro violently resisted Defendant

6  Simpson's subsequent attempt to arrest Plaintiff Muro.  *Id.*

7  Defendant Cancio, coming to the aid of Defendant Simpson, warned

8  Plaintiff Muro to stop resisting or Defendant Cancio would taser

9  Plaintiff Muro.  *Id.*, 5.  When Plaintiff Muro ignored Defendant

10  Cancio's order to stop resisting, Defendant Cancio tasered

11  Plaintiff Muro.  *Id.*

12      Plaintiff Muro alleges he never resisted the officers; he

13  tried to comply with Defendant Simpson's request to allow him

14  entry to the residence but the porch was too narrow to allow him

15  to do so; Defendant Simpson attacked him without reason; and

16  Defendant Cancio unreasonably tasered him when he was not

17  resisting.  *See Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir.

18  2001) ("where there is no need for force, *any* force used is

19  constitutionally unreasonable") (emphasis in original).  Doc. 1,

20  Compl., ¶ 9; Doc. 78, RSUF ##39-45.

21      There is a genuine issue of material fact whether Plaintiff

22  Muro was resisting arrest when Defendant Cancio tasered Plaintiff

23  Muro, and thus whether Defendant Cancio's use of force against

24  Plaintiff Muro was necessary and reasonable under the

25  circumstances.  Cancio's motion as to Muro is DENIED.

26

27          **b.   Against Plaintiff Zamora**

28      The complaint does not allege Defendant Cancio used any

**25**

1   force against Plaintiff Zamora.  Doc. 1, Compl., ¶¶ 11-12.  The

2   complaint alleges while Defendant Cancio tasered Plaintiff Muro,

3   other MAGEC officers "yanked [Plaintiff Zamora] . . . out of the

4   house, off the porch, and thr[ew] [him] on to his knees.  One of

5   the defendant officers then grabbed [P]laintiff Zamora's arm and

6   twisted it behind his back and put him in a choke hold."  Id.,

7   ¶ 11.  The allegation that Defendant Cancio was present during

8   the alleged application of force against Plaintiff Zamora is not

9   sufficient to raise an issue of material fact regarding any

10  Section 1983 liability he may have for the application of force

11  on Plaintiff Zamora.  See *Jones v. Williams*, 297 F.3d 930, 939

12  (9th Cir. 2002) ("[w]e reject the idea that mere presence at a

13  search or membership in a group, without personal involvement in

14  and a causal connection to the unlawful act, can create liability

15  under [S]ection 1983").  Summary judgment is GRANTED in favor of

16  Defendant Cancio against Plaintiff Zamora regarding Section 1983

17  liability for excessive force.

18

19          **2.   Defendant Villalvazo**

20          **a.   Actions taken toward Plaintiff Muro**

21          The complaint does not allege Defendant Villalvazo used any

22  force on Plaintiff Muro.  Defendant Villalvazo conceded in

23  deposition testimony that he used his oleoresin capsicum spray on

24  Plaintiff Muro when Plaintiff Muro was prone on the ground after

25  being tasered by Defendant Cancio, but claims it malfunctioned.

26  Doc. 77-1, Mem. in Opp., 16 (*citing* Villalvazo Dep., 25, 34); *see*

27  *also* Doc. 78, RSUF #90.  Defendant Villalvazo also handcuffed

28  Plaintiff Muro.  *Id.* (*citing* Villalvazo Dep., 31-32); *see also*

1  Doc. 78, RSUF #90.

2      The Fourth Amendment does not prohibit a police officer's

3  use of reasonable force during an arrest.  The first inquiry in

4  analyzing excessive force claims is whether the officers' actions

5  were objectively reasonable in light of the facts and

6  circumstances confronting them.  The facts underlying an

7  excessive force claim are considered from the perspective of a

8  reasonable officer on the scene, without regard to the arresting

9  officer's subjective motivation for using force.  Whether a

10  particular use of force was objectively reasonable depends on

11  several factors, including the severity of the crime that

12  prompted the use of force, the threat posed by a suspect to the

13  police or to others, and whether the suspect was resisting

14  arrest.  *Tatum v. City and County of San Francisco*, 441 F.3d

15  1090, 1095 (9th Cir. 2006).

16      *LaLonde v. City of Riverside*, 204 F.3d 947 (9th Cir. 2000),

17  holds when an arrestee surrenders and is helpless, "any

18  reasonable officer would know that a continued use of [pepper

19  spray] . . . constitutes excessive force."  *LaLonde*, 204 F.3d at

20  960-61.

21      Plaintiffs have raised an issue of material fact regarding

22  whether there was a necessity for Defendant Villalvazo to use

23  force and if he used reasonable force in spraying, handcuffing,

24  and arresting Plaintiff Muro.  Plaintiffs claim Plaintiff Muro

25  never resisted the officers, and was rendered helpless by

26  Defendant Cancio's taser when he was OC sprayed by Defendant

27  Villalvazo.  Defendant Villalvazo's motion for summary judgment

28  against Plaintiff Muro on the excessive force claim is DENIED.

**27**

1          **b.   Actions taken toward Plaintiff Zamora**

2          The complaint does not allege Defendant Villalvazo used any

3    force against Plaintiff Zamora.  Doc. 1, Compl., ¶¶ 11-12.

4    Plaintiffs argue:

5               [Defendants'] presence, acquiescence, and
                proximity . . . when, according to Muro and
6               Zamora, blatantly unreasonable uses of force were
                applied, i.e., Simpson's baton strikes to a prone,
7               face down Muro and Watson's choke hold on Zamora,
                subjects them to liability for those uses of force
8               [citations].

9    Doc. 77-1, Mem. in Opp., 28.

10         This argument has already been rejected.  See *Jones v.*

11   *Williams*, 297 F.3d 930, 939 (9ᵗʰ Cir. 2002) ("[w]e reject the

12   idea that mere presence at a search or membership in a group,

13   without personal involvement in and a causal connection to the

14   unlawful act, can create liability under [S]ection 1983").

15   Summary judgment in favor of Defendant Villalvazo against

16   Plaintiff Zamora is GRANTED.

17

18   **D.   Qualified Immunity**

19         Defendant Officers Cancio and Villalvazo claim entitlement

20   to qualified immunity.  A claim of qualified immunity ordinarily

21   involves a two-step inquiry: (1) the threshold question, taken in

22   the light most favorable to the party asserting the injury, do

23   the facts alleged show the Officers' conduct violated a

24   constitutional right?  *Saucier v. Katz*, 533 U.S. 194, 201 (2001);

25   (2) if a violation could be made out on a favorable view of the

26   parties' submissions, the next sequential step is to ask whether

27   the right was clearly established."  *Id.*

28         Defendants argue that in an excessive force case, a police

**28**

officer is entitled to qualified immunity where, under the
totality of circumstances, the Officers' actions were objectively
reasonable.  *Graham v. Connor*, 490 U.S. 386, 387 (1989).
Objective reasonableness is judged from the perspective of a
reasonable officer on the scene, allowing for the fact that
police officers are often forced to make split-second decisions
about the amount of force necessary in a particular situation.
*Id.* at 387.

        Here, if Mr. Muro's version of the events is found true, and
the trier of fact finds that he did not resist, attempted to
cooperate, and was neither obstructive nor violent, the use of
force would be unreasonable and qualified immunity unavailable
under a theory of mistake.  *See, Saucier v. Katz*, 533 U.S. at
205-206.  The same analysis applies to Officer Villalvazo in
attempting to spray and handcuff Mr. Muro.  The disputed facts do
not permit a reasonableness determination to be made as a matter
of law and whether Mr. Muro was combative is in dispute.

        The Defendants' motions for summary judgment on the basis of
qualified immunity are DENIED.

**E.    *Monell* Liability - City of Fresno**

        Plaintiffs assert two grounds of municipal liability against
the City:

> First, the practices of the Fresno Police
> Department permit a warrant containing inaccurate
> address information to be repeatedly re-served at
> the same location [citation], thus reflecting a
> deliberate indifference to the privacy rights of
> persons to be secure in their homes under the
> Fourth Amendment. . . . [A] warrant service team
> does not find out whether the address information
> contained in a warrant is incorrect, even if

**29**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> multiple prior unsuccessful services have already
> been attempted at the same location, until the
> team actually makes yet another service attempt at
> that residence. [citation]

Doc. 77-1, Mem. in Opp., 33-34.

The second asserted ground of liability is Plaintiffs' claim that the City "does not prohibit or disapprove of choke holds as part of its use-of-force policy." *Id.*, 34. "This lack of a policy clearly contributed to and was a moving force behind the Fresno police officers on scene *condoning* the choke hold applied by [Defendant] Watson." *Id.* (emphasis added).

### 1.  Lack of Warrant Updating System

Liability may attach to a municipality only where the municipality itself causes the constitutional violation through execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.  A municipal "policy" exists when a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated

that authority to, or ratified the decision of, a subordinate.  A
municipal policy may be inferred from widespread practices or
evidence of repeated constitutional violations for which the
errant municipal officers were not discharged or reprimanded.
*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).

Plaintiffs cite the deposition testimony of FPD Sgt. Jensen,
who testified the lack of a warrant updating system frequently
caused multiple warrant service attempts to be made at the wrong
residences.  *See* Doc. 78, RSUF, 44-45.  Sergeant Jensen's
testimony raises a genuine issue of material fact regarding
whether there existed a "longstanding practice or custom which
constitutes the standard operating procedure of" the City,
without which the warrant service on Ortega would not have been
attempted at the residence.  *Menotti*, 409 F.3d at 1147.

### 2.   City of Fresno - Choke-Hold Policy

Plaintiffs argue the City's alleged failure to "prohibit or
disapprove of choke holds as part of its use of force policy . .
. clearly contributed to and was a moving force behind the Fresno
police officers on scene condoning the choke hold applied by
[Defendant] Watson."  Doc. 77-1, Mem. in Opp., 34.  Plaintiff's
expert testified that the City's use of force policies meet
P.O.S.T. standards.  There is no evidence the City has a separate
choke-hold policy.

It is undisputed that Defendant Watson is a CHP officer, not
a FPD officer.  Doc. 78, RSUF #11; Doc. 1, Compl., ¶ 13.  To
sustain a Section 1983 action against a municipality, Plaintiff
must demonstrate that a City policy or custom has caused him

1  injury.  *Nunez v. City of Los Angeles*, 147 F.3d 867, 874 n.10

2  (9th Cir. 1998) (*citing Monell v. Dept. of Social Services*, 436

3  U.S. 658, 691-94 (1978)).  Plaintiffs do not allege how any

4  policy of the City could have prevented Defendant Watson, a CHP

5  officer, from applying a choke hold to Plaintiff Zamora.  Nor do

6  Plaintiffs allege how the FPD officers' alleged condonation of

7  Defendant Watson's choke hold caused any part of Plaintiff

8  Zamora's injury.

9       Summary judgment regarding Plaintiffs' *Monell* allegations

10  against the City concerning a lack of a policy for updating stale

11  or erroneous warrant information in the light of unsuccessful

12  service attempts is DENIED.  Summary judgment regarding

13  Plaintiffs' Monell claims regarding the lack of a choke-hold

14  policy is GRANTED in favor of Defendants against Plaintiffs.

15

16  **F.   False Arrest**

17       Plaintiffs allege Defendants "violated [P]laintiffs' rights

18  under the Fourth Amendment to be free from . . . false arrests."

19  Doc. 1, Compl., ¶ 13.

20       False imprisonment involves the intentional confinement of

21  another against the person's will.  The elements are (1) non-

22  consensual, intentional confinement of a person, (2) without

23  lawful privilege, (3) for an appreciable period of time, however

24  brief.  5 Witkin, Summ. of Cal. Law, *Torts* § 426 (10th ed. 2005)

25  (*citing Easton v. Sutter Coast Hosp.*, 80 Cal.App.4th 485, 496

26  (Cal.App. 1 Dist. 2000)).  False imprisonment and false arrest

27  are not separate torts.  *Id.*

28       A peace officer may arrest a person without a warrant

**32**

whenever (1) the officer has probable cause to believe the person

to be arrested has committed a public offense in the officer's

presence, (2) the person arrested has committed a felony, though

not in the officer's presence, (3) the officer has probable cause

to believe the person to be arrested has committed a felony,

whether or not a felony, in fact, has been committed.  Cal. Pen.

Code Section 836(a)(1)-(3).

Defendants argue:

> [Defendant] Simpson initially arrested [Plaintiff]
> Muro for a violation of [California Penal Code
> Section] 148(a)(1) for willfully resisting,
> delaying, or obstructing a peace officer in the
> discharge or attempt to discharge [*sic*] his
> duties.  After [Defendant] Simpson informed
> [Plaintiff] Muro [] he was under arrest,
> [Defendant] Cancio observed [] [Defendant] Simpson
> was having difficulty trying to handcuff
> [Plaintiff] Muro to place him in custody.
> [Defendant] Cancio saw [Plaintiff] Muro struggling
> with [Defendant] Simpson and reasonably believed
> [] [Plaintiff] Muro was resisting [Defendant]
> Simpson in the performance of his duties by using
> force and violence, a felony under [California
> Penal Code Section] 69.  During the course of this
> struggle, [Defendant] Cancio reasonably believed
> [Plaintiff] Muro committed a battery on
> [Defendant] Simpson by slamming him into a wall,
> in violation of [California Penal Code Section]
> 243(b). [Defendant] Cancio's assistance in
> effectuating the arrest occurred only after
> [Defendant] Simpson had already instructed
> [Plaintiff] Muro that he was under arrest. [¶]
> Under [California Penal Code Section] 836(a)(1)-
> (3), [Defendant] Cancio was reasonably in his
> belief that based on his observations it was
> probable [] [Plaintiff] Muro had committed a crime
> in his presence.  Specifically, it appeared []
> [Plaintiff] Muro used violence against [Defendant]
> Simpson, a felony, whether or not a felony had
> actually been committed. [¶] [Defendant]
> Villalvazo's only participation in placing
> [Plaintiff] Muro in custody was that he put
> handcuffs on [Plaintiff] Muro. [When] [Defendant]
> Villalvazo placed handcuffs on [Plaintiff] Muro,
> [Defendant] Villalvazo reasonably believed []
> [Plaintiff] Muro was lawfully under arrest.

33

Doc. 68, Mot. for Summ. J., 8.  Defendants further state: "[i]t is undisputed that neither [Defendant] Cancio nor [Defendant] Villalvazo played any role in effectuating the arrest of Plaintiff [] Zamora.  Thus, neither officer . . . can be held liable for the alleged wrongful arrest of [Plaintiff] Zamora." *Id.*

Given the dispute over the circumstances of Muro's claimed resistance (defendants) or cooperation with the Officers, the material facts surrounding the probable cause for his arrest are in dispute.  Defendants' motion as to Muro as to the false arrest claim is DENIED.  There is no evidence that either Defendant participated in Zamora's arrest.  Defendants' motion for the alleged false arrest of Zamora is GRANTED.

**G.  Zamora Claims of Emotional Distress, Reputation Damages and Impaired Familial and Interpersonal Relations**

Plaintiff Zamora admitted in his deposition that he does not claim emotional distress or related damages to reputation or interpersonal or familial relations.  Defendant's motion for summary judgment as to these damages claims is GRANTED.

**VI.  CONCLUSION**

For all the reasons stated above, Defendant Cancio and Defendant Villalvazo's motions for summary judgment are:

1.  As to Plaintiffs' First Amendment claim, GRANTED;

2.  As to the malicious prosecution claim, GRANTED as to both Defendants against both Plaintiffs;

3.  As to the Fourth Amendment excessive force claim of

**34**

1   Plaintiff, Muro; DENIED as to Defendant Cancio; DENIED as to

2   Defendant Villalvazo;

3       4.   As to the Fourth Amendment excessive force claim of

4   Plaintiff Zamora, GRANTED as to Defendant Cancio, GRANTED as to

5   Defendant Villalvazo;

6       5.   As to Plaintiff Muro's Fourth Amendment false arrest

7   claim, DENIED as to Officer Cancio, DENIED as to Defendant

8   Villalvazo;

9       6.   As to Plaintiff Zamora's Fourth Amendment false arrest

10  claim, GRANTED as to Officer Cancio, GRANTED as to Defendant

11  Villalvazo;

12      7.   As to Plaintiffs' qualified immunity claims, DENIED as

13  to Defendant Cancio, DENIED as to Defendant Villalvazo;

14      8.   As to the *Monell* liability claims against the City of

15  Fresno:

16           a.   As to the lack of arrest warrant updating system,

17  DENIED as to the City of Fresno;

18           b.   As to the alleged choke-hold policy, GRANTED as to

19  Defendant City;

20      9.   As to Plaintiff Zamora's claims of emotional distress,

21  reputation, damages and impaired familial and interpersonal

22  relations damages, GRANTED as to Defendant Cancio, GRANTED as to

23  Defendant Villalvazo.

24  **SO ORDERED**

25  **DATED:  August 30, 2006.**

26                          **/s/ OLIVER W. WANGER**

27                          _____

28                              **OLIVER W. WANGER**
                            **United States District Judge**